# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
# IN AND FOR KENT COUNTY

DOROTHY M. RUSSUM,　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　:　　　C.A. No: K13C-03-022 RBY

　　　　　Plaintiff,　　　　　　　　　　　:

—————————　　　　　　　　　　　　:

　　　　　v.　　　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　:

IPM DEVELOPMENT PARTNERSHIP　　　:

LLC, a Delaware limited liability company,　:

and SILICATO COMMERCIAL　　　　　　:

REALTY, INC., a Delaware corporation,　　:

　　　　　　　　　　　　　　　　　　　　:

　　　　　Defendants.　　　　　　　　　　:

*Submitted: August 3, 2015*
*Decided: August 14, 2015*

***Upon Consideration of Plaintiff's***
***Motion for Reargument***
**DENIED**

## ORDER

William D. Fletcher, Jr.,Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware for Plaintiff.

Christopher T. Logullo, Esquire, Chrissinger & Baumberger, Wilmington, Delaware for Defendants.

Young, J.

***Russum v. IPM Development Partnership, LLC, et. al.***
*C.A. No. K13C-03-022 RBY*
*August 14, 2015*

## SUMMARY

Dorothy Russum ("Plaintiff") moves for reargument of this Court's recent decision, concerning the application of future Medicare write-offs to her damages consisting of future healthcare expenses. The Court's finding was made following the Delaware Supreme Court's pronouncement in *Stayton v. Delaware Health Corp.*, that the collateral source rule does not extend to billing amounts written-off by healthcare providers, where a patient is insured by Medicare.

In moving for reargument, Plaintiff contends this Court either overlooked controlling authority, or misapprehended the law in not considering provisions of the Medicare Act, dealing with secondary payer status and recovery rights. After review of the pertinent provisions, the Court finds that to adopt Plaintiff's interpretation of the statute would, potentially, result in a situation where the Medicare beneficiary would not receive care, or have that care delayed, pending resolution of who is to cover the cost. Such cannot be the intended purpose of the Medicare program, enacted as a social safety net for American retirees. Therefore, the Court **DENIES** Plaintiff's motion.

## FACTS AND PROCEDURES

Plaintiff allegedly tripped and fell on a ramp, while attempting to enter a retail store. Plaintiff brought suit sounding in negligence against IPM Development Partnership, LLC, the owner of the property, and Silicato Commercial Realty, Inc., the property manager (together, "Defendants").

Among the damages sought by Plaintiff are those stemming from future medical care. On July 15, 2015, this Court granted Defendants' motion in limine seeking to limit these damages by the amount of projected Medicare write-off, that

would be applied to any future healthcare charges. Plaintiff has moved for reargument of this Order.

## STANDARD OF REVIEW

In Delaware, the law concerning motions for reargument is well settled: "[a] motion for reargument will be denied unless the Court has overlooked controlling precedent or legal principles, or the Court has misapprehended the law or facts such as would have changed the outcome of the underlying decision."[1] Furthermore, "[a] motion for reargument is not intended to rehash the arguments already decided by the Court."[2] Similarly, "[n]ew arguments, or arguments that could have been raised prior to the Court's decision, cannot be raised in a motion for reargument."[3]

## DISCUSSION

Plaintiff's motion for reargument concerns this Court's decision to limit Plaintiff's future medical expenses by the projected Medicare write-off. This Court did so, pursuant to the Delaware Supreme Court's recent holding in *Stayton v. Delaware Health Corp.*, finding that the collateral source rule did not apply to federally mandated amounts written off by Medicare.[4] A Plaintiff's damages are limited to the amount actually paid by Medicare, rather than that which is billed for

---

[1] *Kennedy v. Invacare Corp.*, 2006 WL 488590, at *1 (Del. Super. Ct. Jan. 31, 2006) (internal quotations omitted).

[2] *Id.*, at *2.

[3] *Citimortgage, Inc. v. Bishop*, 2011 WL 1205149, at *1 (Del. Super. Ct. Mar. 29, 2011).

[4] 2015 WL 3654325, at *1 (Del. Jun. 12, 2015).

the care provided.[5]

Although admitting that her present argument was not raised in her original briefing on this matter, Plaintiff submits that the Court either overlooked controlling authority, or misapprehended the law, in making its ruling on the future medical costs. As per Delaware law, pertinent and governing authority, when not considered, is grounds for the granting of a motion for reargument.[6] Yet, at the same time, a motion for reargument is not the proper avenue through which to raise *new* arguments that could have been made prior to the Court's decision.[7] The purportedly controlling authority, to which Plaintiff now points, was not discussed prior to the Court's decision. Based on this alone, the Court would normally deny Plaintiff's motion. However, the Court will address the issue,[8] to provide additional clarification regarding post-*Stayton* questions that continue to arise. Indeed, Defendants have addressed the merits of Plaintiff's position indicating they, too, wish this Court to consider the issue.

The asserted authority the Court is asked to consider is the secondary payer

---

[5] *Id.*

[6] *Kennedy*, 2006 WL 488590 at *1.

[7] *Citimortgage, Inc.*, 2011 WL 1205149 at *1.

[8] Superior Court Civil Rule 59(e) tracks Federal Rule of Civil Procedure 59(e). "Therefore, federal case law...can be looked to for guidance in resolving this issue." *Plummer v. Sherman*, 2004 WL 63414 at *1 (Del. Super. Ct. Jan. 14, 2004). Federal courts have deemed the decision whether to consider improper arguments on a motion for reargument to be within the "discretion" of the court. *See e.g., Elizabeth Water Co. v. Hartford Cas. Ins. Co.*, 18 F.Supp.2d 464, 467 (D.N.J. 1998).

scheme under the Medicare Act. Looking specifically at 42 U.S.C. § 1395y(b)(2)(A)(ii), Plaintiff avers that Medicare cannot pay medical expenses where "payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the united States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance."[9] According to Plaintiff, the Medicare Act positions the tortfeasor as the primary payer, and Medicare as the secondary payer. Where the primary payer is liable for payment, Medicare is argued to be no longer responsible for an enrollee's care.

As regards the case at bar, Plaintiff argues that her situation involving future medical expenses is distinguishable from *Stayton* in that, at the time the future medical payments would have accrued, and, if they were deemed to be damages owed, Defendants would already have been found liable. In *Stayton*, by contrast, the damages sought to be recovered were already incurred, with Defendants had not yet been found liable. The significance of this to Plaintiff is the applicability of § 1395y(b)(2)(A)(ii). Plaintiff argues that, where the tortfeasor is found to be liable, as in the situation of future health expenses, § 1395y(b)(2)(A)(ii) forbids Medicare from making payments for the enrollee's medical care. Instead, Plaintiff asserts the tortfeasor is then responsible for the totality of the healthcare bills. Furthermore, it is Plaintiff's point that, unlike Medicare, the tortfeasor does not receive a federally mandated write-off from the healthcare provider. Therefore, the future medical costs

---

[9] 42 U.S.C. § 1395y(b)(2)(A)(ii).

should be the full amount billed, as no write-off exists.

The Court notes the *theoretical* saliency of Plaintiff's position. However, from a real standpoint, acceptance of Plaintiff's argument would result in a turn of events the Medicare Act cannot have been meant to produce. Although the Medicare Act provides that in a tort situation, Medicare becomes a secondary payer, and is prohibited from paying for costs associated with the tort, the Act also provides for an exception: "[t]he M[edicare] S[econday] P[ayer] Act also gives the Secretary the authority to make conditional payments in circumstances where a primary payer is actually responsible for the cost of medical treatment but has not made or cannot reasonably be expected to make payment with respect to such item or service promptly."[10] It is true that, as a general rule, Medicare, when a secondary payer, is prevented from paying for medical coverage. However, as is seen from the Act's language, there exists a broad exception, potentially encompassing a wide range of situations where the primary payer fails to pay its due.

In other words, the system is not established to leave a Medicare enrollee in a position where he cannot receive or pay for healthcare, in the event the primary payer does not pay. At this time, before liability has been established, and before we have any indication of Defendants' insurance policy limits, or the nature of Defendants' assets, no accurate prediction can be made of whether Defendants, as the potential primary payers, will satisfy a damages award stemming from future medical costs. To presume that Medicare will not cover these damages is equally speculative, and

---

[10] *In re Avandia Mkting, Sales & Prods. Liab. Lit.,* 685 F.3d 353, 358 (3d Cir. 2012),*cert. denied*, 133 S.Ct. 1800 (2013) (citing 42 U.S.C. 1395y(b)(2)(B)(i))(internal quotations omitted).

would possibly leave Plaintiff in a situation where receipt of, or payment for, future medical care would be tenuous.

This view is strengthened by Defendants' citation to another provision of the Medicare Act, 42 U.S.C. § 1395cc, whose operation the *Stayton* Court defined as follows: "[w]hen a healthcare provider...delivers medical services to a patient covered under Medicare, the provider must submit a bill to the Medicare agency for reimbursement. The provider cannot seek reimbursement for its medical services from anyone other than Medicare."[11] Although § 1395y(b)(2)(A)(ii) may qualify this statement somewhat, primarily with regard to who ultimately foots the bill, it is unlikely that, even where there is a primary payer established, the healthcare provider would bill this tortfeasor, or Plaintiff directly. The system is devised such that enrollees have their care paid for by Medicare. The statute explicitly states providers are to bill Medicare, and no one else. Therefore, despite the theoretical application of Plaintiff's argument – future medical expenses are different, temporally, from already incurred costs – in fact, the healthcare provider would look to a judicially determined tortfeasor for payment; particularly given the fact that this torfeasor may not have the funds to cover this expense. Intended as a social safety net for elderly Americans,[12] any other conclusion, wherein an ailing enrollee would have care delayed, or forgo care all together, is not rational and is contrary to Medicare's

---

[11] *Stayton,* 2015 WL 3654325 at *2.

[12] Michael R. Wilson, *The Policymaker's Handbook to Entitlement Reform: A New Approach to Saving Our Seniors*, 18 Elder L.J. 159, 166 (2010) ("Medicare attempted to establish a social safety net of care for retirees").

purpose.[13]

## **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for reargument. **IT IS SO ORDERED**.

        /s/ Robert B. Young
                J.

RBY/lmc
oc:    Prothonotary
cc:    Counsel
        Opinion Distribution

---

[13] Arguably, any position, that the workings of future Medicare payments are speculative, is disingenuous, since the very possibility – to say nothing of extent – of future medical services and charges is, itself, extremely speculative. Hence, the application of a very concrete mathematical formula is the very least speculative aspect of the process.